NATHAN S. VOGEL, APPELLANT, v. ATLANTIC TAR AND CHEMICAL WORKS, LIMITED, RESPONDENT.

Argued October 24, 1924—Decided January 19, 1925.

A broker who makes a contract with a corporation, by the terms of which it agrees to pay him a commission on sales of the company's stock, cannot recover from the company commissions upon sales of stock not owned by it, but belonging to certain of its stockholders, although the broker in selling the same acted in good faith and under the honest belief that the stock sold by him belonged to the corporation.

On appeal from the Supreme Court.

For the appellant, *Feit & Feit.*

For the respondent, *Leo S. Lowenkopf.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This appeal brings up for review a judgment entered upon a verdict in favor of the plaintiff and against the defendant corporation in an action brought to recover commissions on a sale of corporate stock of the defendant company pursuant to a written brokerage contract signed by one Weiner, as vice-president and general manager of the defendant corporation, under authority conferred upon him to do so by the corporation, and in which the commissions to be paid to the plaintiff for bringing about sales of the company's stock were fixed.

At the time of the execution of this contract the total authorized issue of capital stock of the company was sixty thousand shares. Of this amount, fifty thousand shares had been issued to various stockholders, and ten thousand shares remained in the treasury of the company.

After receiving his brokerage contract, the plaintiff negotiated sales of several blocks of the stock of the company at different times to one Hetzel, at agreed upon prices; the

purchase-money therefor was paid by Hetzel, and the stock was delivered to him through the plaintiff, in accordance with his contract of purchase. None of this stock, however, was treasury stock belonging to the company, but was stock which had been issued to and was held—some of it—by Weiner, the vice-president and general manager, and the rest by a stockholder named Lewis, who together owned two-thirds of the total authorized stock issue. Commissions were paid upon all of the sales except the last by checks signed "Atlantic Tar & Chemical Works, Ltd., by D. Weiner, General Manager." The commissions on the last sale only having been paid in part (the payment being by a check signed in the same way already indicated), the present suit was instituted to recover the balance, amounting to $4,755.20. Although the stock delivered to Hetzel in satisfaction of his purchase was not treasury stock, the plaintiff was not aware of this fact; the certificates delivered to him and redelivered by him to Hetzel not being those originally issued to Weiner and to Lewis, and duly assigned by them to Hetzel, but new certificates issued under the instructions of Weiner in the place of an equal number of the original certificates issued to him and to Lewis, and duly surrendered by them to the company. These are the facts upon which the plaintiff's right to recover depends.

The question, therefore, which the present appeal presents for decision is whether a contract made by a corporation with a broker, by the terms of which the former agrees to pay to the latter a commission on sales of the company's stock, imposes upon the corporation the obligation of paying such commissions upon sales of stock not owned by it, but belonging to one or more of its stockholders, when it appears that the broker acted in good faith in negotiating such sales, under the honest belief that the stock, the sale of which he procured, belonged to the corporation, and not to certain stockholders thereof. We say that this is the question upon which the determination of the present case depends, for the reason that there is nothing in the proofs sent up with the appeal which even suggests that the corporation itself (the board of directors)

had any knowledge that, under color of its contract with the plaintiff, certain of the stockholders were negotiating sales of their own stock, or that the commissions on such sales were being paid out of the funds of the corporation, to the detriment of other stockholders.

In our view, good faith on the part of the broker in negotiating these sales is immaterial in determining the existence of liability on the part of the corporation. That liability is prescribed by the contract itself, which obligated the corporation to pay commissions on the sales of its *own* stock, in the event of the broker being the producing cause of such sales; not to pay commissions upon the sales of stock which belonged to third persons, provided the broker, in bringing about such sales, was ignorant of the real situation and honestly believed that it was the stock of the corporation which was being sold by him.

In the absence of any proof supporting the theory that the corporation was cognizant of the fact that certain of its stockholders were taking advantage of its contract with the plaintiff to unload their stock upon Hetzel, it is not necessary to determine whether its acquiescence (if such acquiescence was shown) would bar it from successfully denying liability to pay the plaintiff's claim. We may say, however, that it is difficult for us to perceive how a corporation may assume an obligation by acquiescence in an illegal act perpetrated in its name, when an express contract by it to perform such illegal act would be *ultra vires* and void. We say "an illegal act," because to us it seems clear that a promise on the part of a corporation to pay, out of its corporate funds, commissions to a broker for negotiating a sale of stock belonging to one of its stockholders would be an absolute betrayal of its trust; for corporate funds, after the payment of corporate debts and legitimate corporate expenses, are held by the corporation as trustee for its stockholders, and the use of any part of those funds for the benefit of a single stockholder would be a fraud upon other stockholders to the extent of the moneys so appropriated.

The views which we have expressed leads to a reversal of the judgment under review, and it will be so ordered.

*For affirmance*—THE CHANCELLOR, PARKER, MINTURN, BLACK, KATZENBACH, LLOYD, JJ.  6.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, WHITE, GARDNER, CLARK, McGLENNON, KAYS, JJ.  7.