## SAFECO INSURANCE COMPANY OF AMERICA

v.

## Marcia WETHERILL, Appellant.

No. 79–2074.

United States Court of Appeals, Third Circuit.

Argued Jan. 18, 1980.

Decided May 1, 1980.

Wilfred F. Lorry, Stephen L. Hymowitz, John A. Rothschild (argued), Lorry & Hymowitz, Philadelphia, Pa., for appellant.

Louis E. Bricklin (argued), Michael Saltzburg, Bennett, Bricklin & Saltzburg, Philadelphia, Pa., for appellee.

Before HUNTER, HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

In this diversity suit which all parties agree is governed by Pennsylvania law, we must predict whether the Pennsylvania Supreme Court would compel an insurer to arbitrate under the arbitration clause of an uninsured motorist provision where the automobile involved in the collision with its insured was admittedly insured, but in an amount insufficient to cover the claimant's

damages and injuries. Suit was brought by Safeco Insurance Company of America (hereinafter "Safeco") to enjoin defendant Wetherill, the injured claimant, from proceeding with the arbitration she invoked pursuant to a provision of the policy applicable to collisions with uninsured automobiles. The district court granted the permanent injunction enjoining Wetherill from proceeding in arbitration with the uninsured motorist claim. The court held that since the other motorist involved in the accident maintained at least the minimum amount of liability insurance required by Pennsylvania for the vehicle, it could not be considered an "uninsured" automobile.

The injured claimant, Wetherill, was the driver of an automobile involved in a collision with an automobile driven by Linda Hatton. Hatton was insured by a policy of motor vehicle liability insurance issued by State Farm Mutual Automobile Insurance Company which provided limits of coverage for personal injury liability insurance in the amount of $15,000 for the claims of any one person arising out of any one accident and $30,000 aggregate for the claims of all persons arising from any one accident.[1] State Farm paid Wetherill the sum of $15,000 in settlement of her personal injury claims.

At the time of her accident, the car Wetherill was driving was insured under a policy issued by Safeco to David Wetherill, defendant's father. That policy contained a section entitled "Damages for Bodily Injury Caused by Uninsured Automobiles"[2], which provided that Safeco would pay:

> all sums which the insured or his legal representative *shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile* because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident

and arising out of the ownership, maintenance or use of such uninsured automobile; *provided*, for the purposes of this coverage, *determination as to whether the insured* or such representative *is legally entitled to recover such damages*, and if so the amount thereof, *shall be made by* agreement between the insurer or such representative and SAFECO or, if they fail to agree, by *arbitration* (emphasis added).

The section contained an arbitration clause, which provided:

> If any person making claim hereunder and SAFECO do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this section, then, upon written demand of either, the matter or matters upon which such person and SAFECO do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and SAFECO each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this section.

For the purposes of this section of the insurance policy, the term "insured" included the named insured, any relative and any other person while occupying an insured automobile. "Uninsured automobile" was defined as:

> (a) *an automobile* or trailer with respect to the ownership, maintenance or use of *which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bod-*

---

1. This is the minimum insurance coverage allowed under the Pennsylvania financial responsibility law. Pa.Stat.Ann. tit. 40, § 1009.104 (Purdon Supp.1979–1980).

2. Pennsylvania requires that motor vehicle liability insurance policies provide coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease." Pa.Stat.Ann. tit. 40, § 2000(a) (Purdon 1971).

*ily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or*

(b) a hit and run automobile (emphasis added).

Wetherill informed Safeco that she desired to assert a claim under the uninsured motorist provision of her father's policy because she alleged that she suffered damages in excess of $15,000, the maximum amount recoverable under the Hatton policy. Safeco denied payment because it claimed that no uninsured motorist was involved in Wetherill's accident. Wetherill then filed a demand for arbitration with the American Arbitration Association's Philadelphia office. Thereafter Safeco filed suit in district court, seeking both a declaratory judgment that Wetherill was not entitled to recover from Safeco under the uninsured motorist provision and a permanent restraining order enjoining Wetherill from proceeding further with the arbitration demanded through the American Arbitration Association. Wetherill filed an answer and a motion to dismiss the complaint, alleging that under the applicable Pennsylvania law, the district court did not have subject matter jurisdiction over a dispute governed by the arbitration provision of the insurance policy. On June 21, 1979, Safeco filed a motion for a preliminary injunction, enjoining the arbitration hearing which was scheduled for June 28.

On June 26, 1979, the district court granted Safeco's request for a permanent injunction. There was no written opinion. The court announced orally that although "the general rule is that the arbitrators have jurisdiction to determine what is arbitrable under the contract between the parties", the court would follow the decision made a few days earlier in *Prudential Property and Casualty Insurance Co. v. Pont*, 489 F.Supp. 9, No. 78–3331, (E.D.Pa. June 22, 1979), which the court summarized as holding that a "defendant in a similar case is not entitled to uninsured motorist coverage where the party allegedly responsible for the accident is insured to minimum [*sic*] extent required by Pennsylvania law." The district judge concurred with his colleague that the conclusions reached in two Philadelphia County Court of Common Pleas cases, [*Stephen v. Nationwide Insurance Co.*, 2 P.C.R. 129 (C.P.Phila.1979) and *Mapp v. Nationwide Insurance Co.*, 1 P.C.R. 532 (C.P.Phila.1978), *rev'd*, 408 A.2d 850 (1979), *allocatur denied*, October 31, 1979], are "sound and practical."

The parties do not dispute the applicability of Pennsylvania law. On appeal, Wetherill claims that this is a dispute concerning uninsured motorist coverage, and that under Pennsylvania law such a dispute is solely within the province of the arbitrators and is not to be decided by a court. Safeco claims that since it is conceded that the other party involved in Wetherill's accident was insured to the minimum extent required by law, the uninsured motorist provision does not apply and therefore the arbitration clause is inapplicable.

In a diversity action such as this, we are governed by state substantive law as pronounced by the state's highest court. *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Western Pennsylvania National Bank v. American Insurance Co.*, 428 F.2d 1220 (3d Cir. 1970). We begin consideration of this issue with the recognition that Pennsylvania courts favor arbitration. This is reflected in a line of cases where the courts have refused to enjoin arbitration of various issues with respect to coverage under an uninsured motorist arbitration provision. In most of these cases, it was conceded that the vehicle involved was uninsured. *See, e. g., Allstate Insurance Co. v. McMonagle*, 449 Pa. 362, 296 A.2d 738 (1972); *Preferred Risk Mutual Insurance Co. v. Martin*, 436 Pa. 374, 260 A.2d 804, *cert. denied*, 398 U.S. 905, 90 S.Ct. 1697, 26 L.Ed.2d 65 (1970); *Pennsylvania General Insurance Co. v. Barr*, 435 Pa. 456,

257 A.2d 550 (1969); *Allstate Insurance Co. v. Taylor*, 434 Pa. 21, 252 A.2d 618 (1969); *Merchants Mutual Insurance Co. v. American Arbitration Association*, 433 Pa. 250, 248 A.2d 842 (1969); and *Harleysville Mutual Insurance Co. v. Medycki*, 431 Pa. 67, 244 A.2d 655 (1968). In another case, the issue held to be arbitrable 'vas whether or not the motorist was uninsured. *See, National Grange Mutual Insurance Co. v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (1968). In none of these cases did the Pennsylvania Supreme Court compel arbitration when, as here, the automobile allegedly "uninsured" concededly carried the minimum insurance required by Pennsylvania law. This is an issue it has not yet decided.

This court recently has had occasion to consider the difficulties of the ascertainment of applicable state law when the highest state court has not "recently spoken to the precise question at issue in a particular setting." In *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir. 1980), we noted that "our disposition of such cases must be governed by a prediction of how the state's highest court would decide were it confronted with the problem." The sources to be used in making such a prediction are the decisional law of the highest state court in analogous cases, the dicta of that court, and, to a lesser degree, the decisional law of lower state courts and other federal courts, which "should be accorded 'proper regard' . . . but not conclusive effect." *Id.* at 662. As we concluded in *National Surety Corp. v. Midland Bank*, 551 F.2d 21, 30 (3d Cir. 1977), "an intermediate appellate court holding is presumptive evidence, rather than an absolute pronouncement, of state law." We are not obliged to give any such source more precedential value than would be given to it by the state's highest court. A diversity litigant should not be "penalized for his choice of the federal court by being deprived of the flexibility that a state court could reasonably be expected to show." *Becker v. Interstate Properties*, 569 F.2d 1203, 1206 (3d Cir. 1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).

In this case, there are some relevant decisions by the Pennsylvania trial courts and intermediate appellate court. Unfortunately, these decisions point us in opposite directions. At the time of the district court order, there were two decisions in the Court of Common Pleas of Philadelphia County where the courts rejected the claim that a vehicle could be considered "uninsured" if it was allegedly "underinsured". Therefore, the courts refused to compel arbitration under an uninsured motorist provision. *Mapp v. Nationwide Insurance Co., supra, Stephen v. National Insurance Co., supra.* In a decision filed four days before the hearing and order in this case, another judge of the Eastern District of Pennsylvania construing Pennsylvania law cited the two Common Pleas Court decisions and refused to compel arbitration, holding that "where there was the statutorily required minimum liability insurance coverage on the vehicle responsible for the accident, the uninsured motorist provision of the second vehicle would not be operative." *Prudential Property and Casualty Insurance Co. v. Pont*, 489 F.Supp. 9, 13 (E.D.Pa. 1979).[3]

---

**3.** There are several factual differences between the *Pont* case and this case. The uninsured motorist arbitration clause there provided:

The actual amount we'll pay under this part of the policy will be determined by agreement between the insured person and us. If no agreement can be reached, the matter will be submitted for arbitration. . . .

The policy had previously provided that "[w]hether or not a claim is payable and the actual amount we'll pay" would both be determined by arbitration if agreement could not be reached. The court noted that the changed language indicated that under the revised clause only the issue of damages was arbitrable and the issue of liability was not. The policy also was revised to provide that arbitration should proceed under the Pennsylvania Arbitration Act of 1927, instead of common law arbitration which has a more limited scope of review. Nonetheless, the district court held neither of these distinctions was critical, and instead referred to the Court of Common Pleas' decisions in *Mapp* and *Stephen* as "logically persuasive", predictive of what Pennsylvania's highest court would decide, and reaching "sound and practical" conclusions.

After the decision in this case, a panel of the Superior Court of Pennsylvania reversed the decision of the Court of Common Pleas in the *Mapp* case, and in a short opinion held that under an arbitration clause similar to that applicable here,[4] arbitration was appropriate. *Mapp v. Nationwide Insurance Co.,* —— Pa.Super. ——, 408 A.2d 850, 851 (1979).

While a decision of Pennsylvania's intermediate appellate court would be entitled to "some weight", it is difficult to accord the *Mapp* decision such weight because it provides us with no analysis. Furthermore, it cites as support three Pennsylvania decisions, *Runewicz v. Keystone Insurance Co.,* 476 Pa. 456, 383 A.2d 189 (1978); *Grange Mutual Casualty Co. v. Pennsylvania Manufacturers' Association Insurance Co.,* 438 Pa. 95, 263 A.2d 732 (1970); and *Gallagher v. Educator and Executive Insurers, Inc.,* 252 Pa.Super. 414, 381 A.2d 986 (1977), which we are unable to read as, in fact, supportive of the result.

In the first case cited, *Runewicz v. Keystone Insurance Co., supra,* the claimant proceeded to arbitration of her claim against her own insurance carrier after alleging that the maximum sum payable under the policy of the responsible party was insufficient to satisfy her claim in full. The insurance company appealed an arbitration award in her favor, claiming that it was contrary to the contract. The Supreme Court of Pennsylvania, in a four to two decision, held that its scope of review in common law arbitration cases is narrow and that the arbitrator's award was not subject to disturbance for a mistake of either law or fact but could be set aside only on "a showing of denial of a hearing or fraud, misconduct, corruption, or similar irregularity leading to an unjust, inequitable or unconscionable award." 476 Pa. at 461, 383 A.2d at 192. It is of considerable significance that in the *Runewicz* case the insurance carrier did not object to appointment of an arbitrator, and, unlike the situation

here, submitted to arbitration. Therefore, the majority did not reach the issue of the interpretation of the word "uninsured" in a standard uninsured motorist provision.

The two dissenting justices did reach that issue. Notwithstanding the narrow scope of review in common law arbitration cases, they would have held that a vehicle which is insured can not be considered one which is "uninsured" because it does not satisfy the claimant's claims in full. Justice Pomeroy wrote:

> It is undisputed that the driver of the vehicle involved in the crash in which Mrs. Runewicz was injured was insured. Indeed, the parties to the accident settled Mrs. Runewicz's claim against the other motorist for the full amount of the other driver's policy, $25,000, and the sum was paid by the other driver's insurer. It simply cannot be said that the other driver was "uninsured" within the meaning of Mrs. Runewicz's policy, for the uninsured motorist coverage of that policy rests totally on the condition that the offending motorist will in fact be uninsured.

476 Pa. at 466, 383 A.2d at 194.

The second case cited by the *Mapp* court, *Grange Mutual Casualty Co. v. Pennsylvania Manufacturers' Insurance Co., supra,* also appears to have provided insufficient legal basis upon which to predicate the *Mapp* decision. In that case the insurance carrier covering the other automobile had disclaimed liability to the claimant on the ground that the driver of that car did not have permission of the insured to use the automobile. When the claimant then requested arbitration of the claim under the uninsured motorist provision of his own policy, his insurance carrier brought suit for declaratory judgment that the operator of the other car was in fact covered by the other insurance and therefore was not an "uninsured motorist" within the meaning of

---

4. The arbitration clause provided:

  If we and a covered person disagree whether that person is legally entitled to recover damages from the owner or operator of an unin-

sured motor vehicle or do not agree as to the amount of damages, either party may make a written demand for arbitration.

its policy. The court held that whether or not the other driver was covered by the insurance policy was an issue of fact, and that when there was an arbitration clause in the policy such an issue was for the arbitrator and not for the court to decide. 438 Pa. at 97–98, 263 A.2d at 733.

As Justice Pomeroy noted in his dissent in the *Runewicz* case, the *Grange* decision is again not applicable to the issue in question here. Justice Pomeroy stated:

> *Grange Mut. Cas. Co. v. Pennsylvania Mfgrs' Ins. Co.*, 438 Pa. 95, 263 A.2d 732 (1970), cited by the majority, lends no support to its position, for in that case the issue was whether the person operating an insured automobile had permission to do so and hence was not an uninsured motorist. This was a question of fact for the arbitrator to resolve. Here, however, there is no such question; what the arbitrators have done here is to create a coverage where, by the plain words of the contract, none existed.

476 Pa. at 466, 383 A.2d at 194.

The final case cited by the *Mapp* court, *Gallagher v. Educator and Executive Insurers, supra*, appears to be both factually and legally inapposite to the primary legal issue both in *Mapp* and here. In that case the injured claimant, suing on her own behalf and on behalf of the estate of her husband who had been killed following a collision with an uninsured motorist, first recovered under the uninsured motorist provision of the policy covering her father-in-law's car, which was the vehicle her husband had been driving at the time of the collision. Then, in arbitration, she sought to recover under the uninsured motorist provision of her husband's policy notwithstanding its exclusion of injuries sustained by the insured "while occupying an automobile . . . owned by . . . a relative." The arbitration award denied recovery and the claimant appealed on the ground that the arbitrator may have relied on this exclusion, which she claimed was illegal under Pennsylvania law. The Pennsylvania Superior Court reinstated the award of the arbitrator, holding that where the arbitrator's award contained no explanation of the basis on which it was made, but simply denied recovery, and the parties did not agree on the facts upon which the award was made or upon its legal basis, there was no basis for vacating the award in the absence of any evidence to show that the arbitrator in fact relied upon this exclusion. 252 Pa.Super. at 421–22, 381 A.2d at 989. The relevance of this decision to the question at issue appears negligible.

Under the circumstances, we would find the Superior Court's *Mapp* decision to be a slender reed upon which to predict how Pennsylvania's highest court would rule in a similar situation. Furthermore, it appears that the Superior Court of Pennsylvania may itself be divided on this issue. Counsel for appellee has brought to our attention an *en banc* decision by the Superior Court, with no reported opinion, *Harmer v. State Farm Mutual Insurance Co.*, 238 Pa.Super. 773, 357 A.2d 224 (1976), which affirmed the lower court's denial of a petition to compel arbitration under an uninsured motorist provision of two persons injured in a collision with an automobile which carried minimum liability insurance. In its brief appellee states that the Superior Court panel that decided *Mapp* "could not have been expected to know [that] its decision in *Mapp* is in direct conflict with a prior *per curiam* affirmance rendered by the entire Superior Court" in the *Harmer* case.[5] We note that the *Mapp* court made no reference at all to the prior Superior Court *per curiam* action.[6]

---

5. At oral argument counsel for appellee explained that because the *Harmer* original decision was unreported, and there was no opinion in the Superior Court, the only way in which the decision could have been located was by examination of Superior Court files.

6. Although we recognize that the action in *Harmer* was a *per curiam* decision of seven Superior Court judges, we are unable to as-

certain whether under Pennsylvania law, this entitles that decision to any greater weight than the panel decision of three Superior Court judges in *Mapp*. The *Harmer* action was taken shortly before the July 1, 1976 date when the new Pennsylvania Rule of Appellate Procedure 3102, which permitted the Superior Court to sit in panels, went into effect. The Pennsylvania Supreme Court Order of May 9, 1978 requires

Under these circumstances, we must make an independent judgment as to what the decision of the highest court in Pennsylvania would be. The Pennsylvania Supreme Court has held that although the parties to an arbitration agreement must submit a dispute within the scope of that agreement to an arbitration panel, "[t]he issue of whether [a] dispute is one that is covered by the terms of the arbitration agreement is one for the court to determine." *Women's Society for the Prevention of Cruelty to Animals v. Savage*, 440 Pa. 34, 36, 269 A.2d 888, 890 (1970). That court has also stated that the scope of the arbitration contemplated in an uninsured motorist coverage "must be decided in light of the language of the insurance policy affording the coverage." *National Grange Mutual Insurance Company v. Kuhn*, 428 Pa. at 181, 236 A.2d at 759. The policy in this case requires arbitration only for issues arising out of the use of an "uninsured automobile". It defines an "uninsured automobile" as one which has "no bodily injury liability bond or insurance policy" "in at least the amounts specified by the financial responsibility law of the [applicable] state." Therefore, the automobile at issue in this case was not "uninsured." The only two justices of the Pennsylvania Supreme Court who have expressed an opinion on this issue have stated that judicial construction which would interpret the words "insured vehicle" as one which is "uninsured", would be "irresponsible." *Runewicz v. Keystone Insurance Co.*, 476 Pa. at 467, 383 A.2d at 194 (Pomeroy, J., dissenting).

We also believe that the Pennsylvania Supreme Court would find persuasive the reasoning of the Supreme Court of New Jersey, its neighboring state, when presented with a similar issue. In *Gorton v. Reliance Insurance Co.*, 77 N.J. 563, 391 A.2d 1219 (1978), after the claimants had recovered the maximum insurance from the carrier covering the other automobile involved in the collision, they attempted to recover the remainder of their damages from the insurance carrier covering their car. Claimants there, unlike the claimant here, candidly conceded that the other vehicle did not qualify as "uninsured" since it did carry insurance, but argued that, as so construed, their own policy failed to provide the coverage mandated by New Jersey law. That claim was rejected by the New Jersey Supreme Court which said:

> The protection intended is against an "*uninsured*" motorist, not one who is "*underinsured*." The legislature required that a minimum level of coverage be available for each accident when more than one person was injured. It did not undertake to guarantee an irreducible minimum sum available to every injured person under every set of circumstances but simply to make available a *policy* offering minimum levels of coverage.

*Id.* at 572, 391 A.2d at 1224 (emphasis in original).

We recognize, as did the New Jersey Supreme Court, that this interpretation results in the anomaly that injured claimants would be in a better position were the tortfeasor's vehicle totally uninsured rather than underinsured. However, as the New Jersey Supreme Court noted, "the objective of the legislature as we perceive it was to protect the public from a noninsured, financially irresponsible motorist, not one who is insufficiently insured." *Id.*, 391 A.2d at 1223.

We believe that the Pennsylvania Supreme Court would find this reasoning persuasive and would hold that a vehicle which carries the legally required insurance is not an "uninsured" vehicle. Therefore, there is no basis in such cases to compel arbitration under a policy such as that applicable here. We believe that the Pennsylvania Supreme Court would not, as appellant in effect asks us to do, transform an uninsured motorist provision into an excess accident insurance provision by judicial fiat, but would leave

---

that appeals in the Superior Court are to be heard by a three-judge panel "unless in a given case the Superior Court, by special order, directs otherwise." There is nothing in the record to indicate whether the Superior Court considered entry of such a special order with respect to the panel opinion in the *Mapp* case.

that decision to the Pennsylvania legislature.

For these reasons, we will affirm the judgment of the district court.