**MYERS, Kevin, Appellant,**

v.

**STATE FARM INSURANCE COMPANY.**

**No. 87–1055.**

United States Court of Appeals, Third Circuit.

Argued July 7, 1987.

Assigned Jan. 12, 1988.

Decided March 24, 1988.

Francis X. Nolan (argued), Himes, Sanders & Nolan, P.C., Philadelphia, Pa., for appellant.

James R. Ronca (argued), Schmidt & Ronca, P.C., Harrisburg, Pa., for amicus curiae Pennsylvania Trial Lawyers Ass'n (on behalf of appellant).

Earl T. Britt (argued), Mary Gay Scanlon, Duane, Morris & Heckscher, Philadelphia, Pa., for appellee.

James C. Haggerty (argued), Swartz, Campbell & Detweiler, Philadelphia, Pa., for amicus curiae Pennsylvania Defense Institute (on behalf of appellee).

Before HIGGINBOTHAM and BECKER, Circuit Judges, and BARRY, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This appeal concerns the legal status under Pennsylvania law of an insurance policy's limitations on underinsured motorist coverage. The district court, after denying plaintiff's motion to dismiss a counterclaim for declaratory relief, entered an order granting summary judgment in favor of the defendant insurance company. We will affirm.

## I. BACKGROUND

Appellant Kevin Myers was a passenger in an automobile owned and operated by Michael Joniec when that vehicle was involved in a single car collision on July 5, 1985. As a result, Myers sustained severe injuries. Prior to the collision, Joniec had been issued an automobile insurance policy by appellee State Farm Insurance Company ("State Farm"). This policy provided liability and underinsurance coverage, each in the amount of $15,000 for the claims of any one person arising out of any accident and $30,000 for injuries sustained by two or more individuals in any one accident. As a passenger, Myers was an "insured" under the terms of the policy. He was also an insured under a policy issued by Metropolitan Insurance Company, which contained first party medical coverage and underinsured motor vehicle coverage.

State Farm paid the full $15,000 in liability coverage to Myers,[1] but it refused to pay his claim for underinsurance benefits, arguing that such a claim was precluded by the terms of the policy. Thereafter, Myers commenced an action in the Pennsylvania Court of Common Pleas of Philadelphia County on July 9, 1986 by filing a petition for the appointment of arbitrators. State Farm responded by petitioning to remove Myers's action to the district court. This petition, which was based on diversity of citizenship between Myers and State Farm, was granted. Thereafter, Myers filed a motion to remand his action to state court. The district court denied this motion.

On October 8, 1986, State Farm filed an answer to Myers's petition for the appointment of arbitrators and a counterclaim seeking a declaratory judgment that State Farm was not obligated under the policy to pay Myers's claim for underinsurance benefits. Myers moved to dismiss the counterclaim on October 16, 1986. He alleged that State Farm had failed to state a claim upon which relief could be granted because the insurance policy provided for arbitration rather than judicial resolution of Myers's claims for benefits under the policy.

Although Myers had not answered the counterclaim, State Farm filed a motion for summary judgment on October 31, 1986, in compliance with the district court's directive that all motions for summary judg-

---

* Honorable Maryanne Trump Barry, United States District Judge for the District of New Jersey, sitting by designation.

1. In exchange for payment of this liability claim, Myers executed a release discharging Joniec from any claims arising from the accident. State Farm was also part of this exchange. It agreed not to raise the release as a defense to Myers's claims against it for either underinsured motor vehicle benefits or first party medical benefits.

ment be filed by that date. On December 31, 1986, the district court denied Myers's motion to dismiss the counterclaim and granted State Farm's motion for summary judgment. Myers appeals from the district court's order. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

## II. DIVERSITY JURISDICTION

■ We begin by addressing Myers's claim that there is no diversity of citizenship jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(c) (1982).[2] As the district court properly determined, this lawsuit is not a direct action within the meaning of section 1332(c). Myers, as an injured third party, brings this suit based on State Farm's failure to settle within the policy limits and not, as contemplated by section 1332(c), as a result of State Farm's status as "payor of a judgment based on the negligence of one of its insureds." *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 473 (1st Cir.1979);[3] *accord Fortson v. St. Paul Fire & Marine Ins. Co.*, 751 F.2d 1157, 1159 (11th Cir.1985) ("unless the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action"); *Beckham v. Safeco Ins.*

**2.** This statute provides that,

[f]or the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: *Provided further*, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

28 U.S.C. § 1332(c) (1982) (original emphases).

**3.** In *Velez*, the Court of Appeals for the First Circuit noted that a legislative report pertaining to the enactment of section 1332(c) indicates that Congress enacted this amendment specifically to eliminate from diversity jurisdiction tort claims in which both parties are local residents, but, which under a state direct action statute, are brought against a foreign

*Co. of Am.*, 691 F.2d 898, 901–02 (9th Cir. 1982). State Farm is incorporated and has its principal place of business in the state of Illinois. It therefore is deemed a citizen of that state for purposes of determining diversity. Since Myers is a citizen of Pennsylvania, federal subject matter jurisdiction exists over this action.

## III. ARBITRABILITY

■ Myers also argues that the district court misconstrued the insurance contract when it granted State Farm's summary judgment motion rather than directing the parties to submit this matter to arbitration pursuant to the arbitration provision of the insurance policy.[4] State Farm claims in response that the plain language of this clause limits its applicability to disagreements concerning fault and amount, and that it does not mandate arbitration of disputes over coverage.

State Farm's position is correct. It is well-settled law in Pennsylvania that,

when a party to an agreement seeks to enjoin the other from proceeding to arbitration, judicial inquiry is limited to the question of (1) whether an agreement to arbitrate was entered into and (2) whether the dispute involved comes within the ambit of the arbitration provision.

insurance company without joining the local insured as a defendant. [*White v. United States Fidelity & Guaranty*, 356 F.2d 746,] 747 [ (1st Cir.1966) ].... "The report then makes clear that the words 'direct action' were used [in section 1332(c) ] to refer to statutes such as those in Louisiana and Wisconsin which allow a party injured by the negligence of an insured to pursue his right of action against the insurer alone." *Id.* at 747–48.
*Velez*, 599 F.2d at 473.

**4.** The arbitration clause addressed the issue of Deciding Fault and Amount[.]
Two questions must be decided by agreement between the *insured* and us:
  1. Is the *insured* legally entitled to collect damages from the owner or driver of the ... *underinsured motor vehicle;* and
  2. If so, in what amount?
If there is no agreement, these questions shall be decided by arbitration at the request of the *insured* or us. The Pennsylvania Uniform Arbitration Act, as amended from time to time, shall apply.
Appendix ("App.") at A–66 (original emphases).

*Rocca v. Pennsylvania General Ins. Co.,* 358 Pa.Super. 67, 70, 516 A.2d 772, 773 (1986), *appeal denied,* —— Pa. ——, 535 A.2d 83 (1987) (table). In *Safeco Ins. Co. of Am. v. Wetherill,* 622 F.2d 685 (3d Cir. 1980), this Court considered whether the Pennsylvania Supreme Court would compel an insurer to arbitrate under the arbitration clause of an uninsured motorist provision, where the automobile involved in the accident was insured, but in an amount insufficient to cover the claimant's damages. In deciding this question, we noted that

> [t]he Pennsylvania Supreme Court has held that[,] although the parties to an arbitration agreement must submit a dispute within the scope of that agreement to an arbitration panel, "[t]he issue of whether [a] dispute is one that is covered by the terms of the arbitration agreement is one for the court to determine." [5]

*Id.* at 691 (quoting *Women's Society for the Prevention of Cruelty to Animals v. Savage,* 440 Pa. 34, 36, 269 A.2d 888, 890 (1970)). In this case, the district court properly recognized that this dispute required a legal determination that preceded any question of arbitrability: whether Joniec's motor vehicle constituted an "underinsured vehicle." Immediate arbitration thus was not mandated under the State Farm policy.

### IV. PENNSYLVANIA INSURANCE LAW

In granting summary judgment in favor of State Farm, the district court determined that, under Pennsylvania law, a guest passenger who is an insured under the terms of a motor vehicle insurance policy applicable to the host vehicle and who sustains injuries in a single car collision may not recover the policy's underinsurance benefits when the passenger has already received the limits of the liability coverage under that same policy. Myers contends that this is an improper construction of Pennsylvania law.

At the time the district court rendered its decision, no Pennsylvania appellate court had addressed this precise legal question. After we heard argument in this case, however, the Pennsylvania Superior Court directly resolved this issue in the same way that the district court had. *See Wolgemuth v. Harleysville Mut. Ins. Co.,* —— Pa.Super. ——, 535 A.2d 1145 (1988) (*en banc*). It is this Court's obligation to review the claims presented to the district court and to apply the governing law of Pennsylvania. *See generally Wisniewski v. Johns-Manville Corp.,* 759 F.2d 271, 273–74 (3d Cir.1985) ("Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise."); *Adams v. Cuyler,* 592 F.2d 720, 725 n. 5 (3d Cir.1979) ("Federal courts ... may consider the pronouncements of state intermediate appellate courts as an indication of how the state's highest court would rule."), *aff'd,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). In addition, this Court must consider *Wolgemuth* in light of the rules governing appellate review of a grant or denial of a motion for summary judgment. The Federal Rules of Civil Procedure permit a district court to grant summary judgment where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "On review the appellate court is required to apply the same test the district court should have utilized initially." *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). When a district court is asked to construe contractual clauses that are clear and unambiguous, summary judgment is particularly appropriate. *Landtect Corp. v. State Mut. Life Assurance Co.,* 605 F.2d 75, 79–80 (3d Cir.1979). In this case, where there are no

---

**5.** In *Wetherill,* we concluded that the automobile involved in the collision was not an "uninsured vehicle" within the meaning of the policy and, therefore, that there was no basis to compel arbitration. 622 F.2d at 691.

issues of material fact[6] and the parties agree that the policy provisions regarding underinsured motor vehicle coverage are unambiguous, it was proper for the district court to decide the coverage question on a summary judgment motion. We therefore turn to the district court's legal analysis.

Myers concedes that the district court properly concluded that the terms of the State Farm policy preclude his recovery of underinsurance benefits.[7] The State Farm policy defines an "underinsured motor vehicle" as

a land motor vehicle ... the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; and ... whose limits of liability for bodily injury liability ... are less than the amount of the *insured's* damages; or ... have been reduced by payments to *persons* other than the insured to less than the amount of the *insured's* damages.

Appendix at A-66 (original emphases). The policy also provides that an underinsured motor vehicle "does not include a land motor vehicle ... insured under the liability coverage of this policy...." *Id.* Since Joniec's vehicle was insured under the liability coverage of the State Farm policy, it was not an underinsured motor vehicle that could create for Myers a legal entitlement to underinsured benefits. Myers argues, however, that the exclusionary language in the State Farm insurance policy violates public policy because it is more restrictive in scope than is the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat.Ann. §§ 1701–36 (Purdon 1984).

*Wolgemuth* concluded that "[t]his argument reflects a misapprehension of the nature of underinsured motorist coverage." —— Pa.Super. at ——, 535 A.2d at 1148. Under the statute, all motor vehicle liability insurance policies issued in Pennsylvania must provide underinsured motorist coverage.[8] 75 Pa.Cons.Stat. § 1731(a) (Purdon 1984). In *Wolgemuth,* the Superior Court noted that

[t]he legislature, in establishing $15,000/$30,000 as the minimum permissible liability coverage, unquestionably realized that in many instances an accident victim would be insufficiently compensated by the tortfeasor even though the tortfeasor was insured. But the legislature, with the passage of the Motor Vehicle Financial Responsibility Law, did ensure that every insured individual who is injured by a negligent, underinsured motorist, will have recourse to at least $15,000 of underinsured motorist benefits either (1) pursuant to the policy of insurance applicable to the vehicle in which the individual was a passenger (if the vehicle was not at fault), or (2) pursuant to a policy of insurance under which the injured claimant is an insured person.

—— Pa.Super. at ——, 535 A.2d at 1148 (footnote omitted). The court further explained that "[t]he purpose of underinsured motorist coverage is to protect the insured ... from the risk that a negligent driver of *another vehicle* will cause injury to the

---

**6.** We reject Myers's argument that summary judgment was inappropriate because the actual monetary value of his claim is undetermined. The amount of damages he may have suffered is not a fact material to the issue of coverage. It thus cannot defeat entry of summary judgment. Moreover, his failure to file an answer to State Farm's counterclaim within 20 days from the filing of the claim does not preclude summary judgment. *See* Fed.R.Civ.P. 56(a).

**7.** The State Farm policy provides underinsured motorist coverage as follows:

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of ... an *underinsured motor*

*vehicle.* The *bodily injury* must be caused by accident arising out of the ownership, maintenance or use of ... an *underinsured motor vehicle.*

App. at A-65 (original emphases). The policy defines an insured, *inter alia,* as "any other *person* while *occupying ... your car....*" *Id.* at A-66 (original emphases).

**8.** The Act defines the term underinsured motor vehicle as a "motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.Cons.Stat.Ann. § 1702 (Purdon 1984).

insured ... and will have inadequate liability coverage to compensate for the injuries caused by his negligence." *Wolgemuth,* —— Pa.Super. at ——, 535 A.2d at 1149 (emphases added). Thus, the statute contemplates recovery by a guest passenger up to the limits of the liability coverage applicable to the negligent vehicle. Above that amount, the passenger must recover underinsurance benefits pursuant to another policy under which that passenger was covered. *Wolgemuth,* —— Pa.Super. at ——, 535 A.2d at 1149.

Guided by the reasoning of the unanimous *en banc* Superior Court opinion in *Wolgemuth,* which we predict the Pennsylvania Supreme Court will follow, we conclude that the exclusion does not improperly limit the scope of the underinsurance coverage mandated by Pennsylvania law. Rather, the exclusion in the State Farm policy achieves the purposes of Pennsylvania's Motor Vehicle Financial Responsibility Law by requiring Myers, once he had recovered up to the limits on the negligent vehicle's liability coverage, to obtain any underinsurance benefits pursuant to some other policy that insured him. "To permit appellant to recover underinsured motorist benefits from appellee ... would be to convert essentially first party underinsured motorist coverage into third party liability coverage." *Wolgemuth,* —— Pa.Super. at ——, 535 A.2d at 1150.

## V. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the district court.