### Alice NONEMACHER

v.

### AETNA CASUALTY & SURETY CO.

### Civ. A. No. 88–4911.

United States District Court, E.D. Pennsylvania.

April 11, 1989.

James D. Radmore, Philadelphia, Pa., for plaintiff.

Allan D. Goulding, Rawle & Henderson, Philadelphia, Pa., for defendant.

## MEMORANDUM

CAHN, District Judge.

This case involves a dispute between an insured and her insurance company over the amount of coverage that the company must provide to her. The plaintiff was injured in an automobile accident. She claims that she is entitled to both liability and underinsured motorist coverage. The company asserts that because of an offset provision in the policy, she is only entitled to liability coverage. The plaintiff also as-serts that this dispute is subject to arbitration rather than judicial determination. I hold that this dispute is subject to judicial determination and that the plaintiff is entitled to $100,000 of underinsured motorist coverage and $10,000 of liability coverage.

### Background

On May 23, 1986, the plaintiff, Alice Nonemacher, was severely injured in an automobile accident. The plaintiff was a passenger in a car driven by her husband, Milton Nonemacher, when he ran head-on into another vehicle. As a result of the accident, Mr. Nonemacher and two passengers of the other automobile were killed. Mrs. Nonemacher and the surviving occupants of the other vehicle suffered serious injuries.

At the time of the accident, Mr. and Mrs. Nonemacher were named insureds on an automobile policy issued by Aetna. The policy covered three automobiles, and it had a $50,000 single liability limit and uninsured/underinsured limits of $50,000. Aetna paid $40,000 to the occupants of the other vehicle under the liability coverage. Aetna also offered $10,000 to Alice Nonemacher along with a release that would release only Mr. Nonemacher's estate. Alice Nonemacher did not accept the offer.

Mrs. Nonemacher demanded tender of the underinsured motorist policy limits from Aetna, which Aetna refused. The plaintiff subsequently filed a petition to proceed by arbitration with the Court of Common Pleas of Philadelphia. Aetna removed the case to this court. Aetna also asserted a counterclaim seeking declaratory relief, asserting that Mrs. Nonemacher is not entitled to any underinsured motorist benefits. The parties have now filed cross-motions for summary judgment.

### Discussion

Two issues are before this court: (1) whether this dispute is subject to arbitration rather than judicial determination; and (2) the amount of coverage that Aetna

must provide to Mrs. Nonemacher.[1] Summary judgment is proper in this case because "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[2]

### 1. Arbitrability.

■ The plaintiff urges that this matter should proceed by arbitration. The relevant portion of the arbitration provision in the insurance policy provides:

> If we and a covered person do not agree:
>
> 1. Whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle; or
>
> 2. On the amount of payment which may be owed under this insurance;
>
> either party may make a written demand for arbitration in accordance with the provisions of the Pennsylvania Uniform Arbitration Act.

This provision is essentially the same as the provision that the Court of Appeals interpreted in *Myers v. State Farm Ins. Co.*, 842 F.2d 705 (3d Cir.1988), which provided:

> Two questions must be decided by agreement between the *insured* and us:
>
> 1. Is the *insured* legally entitled to collect damages from the owner or driver of the ... *underinsured motor vehicle;* and
>
> 2. If so, in what amount?
>
> If there is no agreement, these questions shall be decided by arbitration at the request of the *insured* or us.

*Id.* at 707 n. 4. The *Myers* court held that this arbitration provision applied to "disagreements concerning fault and amount, and that it [did] not mandate arbitration of disputes over coverage." *Id.* at 707.

I reach the same conclusion in this case. The language of the arbitration provision limits its applicability to disputes over fault and amount. Because the central issue in this case concerns coverage rather than fault or amount, this dispute is subject to judicial determination rather than arbitration.

### 2. Coverage.

Mrs. Nonemacher claims that she is entitled to $160,000 of insurance coverage from Aetna. She urges that the $50,000 of underinsured motorist coverage should be combined or "stacked" for each of the three automobiles covered under the policy so that she has a total of $150,000 of underinsured motorist coverage. She also asserts that she is entitled to the $10,000 of liability coverage previously offered by Aetna.

Aetna argues that Mrs. Nonemacher is only entitled to $10,000 of coverage. Aetna does not dispute that Mrs. Nonemacher is entitled to the $10,000 of liability coverage that it previously offered to her. However, Aetna claims that she is not entitled to any underinsured motorist coverage. Aetna relies on an offset provision in the insurance policy that reduces the amount of underinsured motorist coverage by the amount it pays under the liability coverage. Aetna has paid or offered to pay $50,000 under the liability coverage of the policy. Thus, Aetna urges, the underinsured motorist coverage should be reduced by $50,000, resulting in no available underinsured motorist coverage for Mrs. Nonemacher. Furthermore, Aetna claims that any stacking of underinsured motorist coverage must be done after the offset provision is applied. Thus, Aetna asserts, Mrs. Nonemacher is not entitled to any underinsured motorist coverage because zero stacked three times is still zero.

I agree with Aetna that the offset provision in the policy reduces Mrs. Nonemacher's underinsured motorist coverage by $50,000. However, I hold that the underinsured motorist coverage must be stacked

---

**1.** The parties agree that the plaintiff suffered substantial damages in the accident, but they have not stipulated to the exact amount. Her damages could be more or less than the amount of coverage she has available. Therefore, I must decide the amount of coverage that is available to her rather than the amount of damages she can actually recover.

**2.** The parties agree that Pennsylvania law applies to this case.

before the offset provision is applied. Thus, Mrs. Nonemacher is entitled to $100,000 of underinsured motorist coverage: $150,000 of stacked underinsured motorist coverage ($50,000 stacked three times) offset by the $50,000 that Aetna has paid or has offered to pay under the liability coverage of the policy.[3]

■ *A. The offset provision.* The underinsured motorist provision in the insurance policy contains a section entitled "Limit of Liability," which states, in part:

D. Any amounts otherwise payable for damages under [the underinsured motorist coverage] shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under the liability coverage of this policy. Any payment under this coverage to or for a covered person will reduce any amount that person is entitled to recover under the liability coverage of this policy.

Aetna claims that this subparagraph "clearly and unambiguously states that the underinsurance benefits are to be reduced by 'all sums paid,' including sums paid under the liability coverage of this policy.... Thus, for each dollar paid by Aetna under the liability coverage of its policy, there must be an equal reduction in the available underinsurance benefits." Defendant's Brief at 7. The plaintiff, on the other hand, urges that even if the language is construed in favor of Aetna, "the provision provides solely for a reduction in an amount equal to any money previously paid to Mrs. Nonemacher under the liability portion of the policy." Plaintiff's Brief at 6.

Aetna's interpretation is correct. I hold that Subparagraph D requires that any amount that Aetna pays under the liability coverage shall reduce any amounts it would otherwise owe under the underinsured motorist coverage. Thus, Mrs. Nonemacher's underinsured motorist coverage must be reduced by the $50,000 that Aetna has paid or has offered to pay under the liability coverage of the policy.

This interpretation is supported by other language in the limit of liability section of the underinsured motorist coverage provision of the policy. Subparagraph B of this section states:

If a single limit of liability for bodily injury liability is shown in the Declarations of this coverage, this is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. We will apply this limit to provide any separate limits required by law for Uninsured and Underinsured Motorists Coverage. However, this provision will not change our total limit of liability.

The policy at issue in this case has a single liability limit for bodily injury of $50,000. Thus, according to Subparagraph B, $50,000 is the maximum limit that Aetna will pay for all damages in a single accident. Because Aetna has already paid or offered to pay $50,000 under the liability coverage for the accident, it has paid its maximum limit of liability for the accident under Subparagraph B and it is not required to pay any underinsured benefits.

■ Mrs. Nonemacher urges that if the offset provision operates as Aetna argues, then it violates public policy because it is more restrictive than Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat.Ann. §§ 1701–36 (Purdon Supp.1988) (hereinafter "MVFRL"). In support of her argument, Mrs. Nonemacher cites language that the courts used in *Myers* and *Wolgemuth v. Harleysville Mut. Ins. Co.,* 370 Pa.Super. 51, 535 A.2d 1145 (1988):[4]

---

**3.** I assume that Aetna will pay the full $50,000 of liability coverage. If it does not, Aetna will only be able to offset the underinsured motorist coverage by that amount of liability benefits that it actually pays.

**4.** In both *Myers* and *Wolgemuth,* the plaintiffs were guest passengers who were injured in single vehicle accidents. The insurance policies in

both cases precluded the plaintiffs from recovering under both liability and underinsured motorist coverage. The *Myers* and the *Wolgemuth* courts both held that the insurance policies did not violate public policy.

Although similar to the case at bar, *Myers* and *Wolgemuth* do not control this case. In those cases, the plaintiffs were class two beneficiaries, while in the instant case the plaintiff is a class

[T]he legislature, with the passage of [MVFRL], did ensure that every insured individual who is injured by a negligent, underinsured motorist, will have recourse to at least $15,000 of underinsured motorist benefits either (1) pursuant to the policy of insurance applicable to the vehicle in which the individual was a passenger (if the vehicle was not at fault), or (2) pursuant to a policy of insurance under which the injured claimant is an insured person.

*Myers,* at 709 (quoting *Wolgemuth,* 535 A.2d at 1148). Mrs. Nonemacher asserts that the "court set forth two alternative paths to underinsured motorist coverage" under which an insured is entitled to recover. Plaintiff's Brief at 9–10. She contends, however, that under Aetna's interpretation of the offset provision, she is precluded from recovering under the second "path" in violation of the language quoted above from *Myers* and *Wolgemuth.*

I reject Mrs. Nonemacher's argument because she can recover under the second "path." As discussed below, Mrs. Nonemacher, by stacking her coverages, is entitled to benefits under the underinsured motorist coverage applicable to the other two vehicles insured under the policy. Thus, she is entitled to coverage under the second "path." The offset provision only applies to the policy applicable to the vehicle involved in the accident, which falls under the first "path." According to the above quoted language, however, she is not entitled to recover under the first "path" because the vehicle in which she was a passenger was at fault. Therefore, the above quoted language, even if applicable to this case, is not violated by the offset provision.

Mrs. Nonemacher also argues that the offset provision violates public policy because it precludes her from recovering under coverage that she "reasonably expects to have [and] that she contracted and paid for." Plaintiff's Brief at 8. This argument is similar to one of the justifications used by courts to hold that insurance policy provisions that prohibit stacking are contrary to public policy.

Under Pennsylvania law, provisions in automobile policies that prohibit stacking of underinsured motorist coverage where multiple vehicles are insured under the policy are invalid. *See Tallman v. Aetna Casualty & Surety Co.,* 372 Pa.Super. 593, 539 A.2d 1354 (1988). The justifications for stacking are:

[F]irst, . . . it furthers the policies sought to be accomplished by the act; and second, that the intended beneficiary of an uninsured motorist policy is entitled to multiple coverage when multiple premiums have been paid. The latter rationale is grounded in the belief that a person has reasonable expectations when he pays separate premiums that he has obtained coverage under separate policies, and therefore is entitled to benefits under each.

*Utica Mut. Ins. Co. v. Contrisciane,* 504 Pa. 328, 338, 473 A.2d 1005, 1010 (1984) (citation omitted); *see also Selected Risks Ins. Co. v. Thompson,* —— Pa. ——, 552 A.2d 1382 (1989).

■ Mrs. Nonemacher asserts that the offset provision is invalid because of her reasonable expectations, just as the second justification for stacking is based on reasonable expectations. However, I hold that Mrs. Nonemacher cannot reasonably expect to recover both liability coverage and underinsured motorist coverage on the same policy applicable to the automobile involved in the accident.

This holding is in accord with *Newkirk v. United Servs. Auto. Ass'n,* 43 Lehigh L.J. 166 (1988). In *Newkirk,* the plaintiff sought to recover both underinsured motorist coverage and liability coverage for damages she sustained when her husband lost control of their vehicle and hit three tree

one beneficiary. The plaintiff in this case had a contractual relationship with the insurance company while the plaintiffs in *Myers* and *Wolgemuth* were only guest passengers. The *Wolgemuth* court stated that it was not reaching the issue in this case: "we . . . express no opinion upon, whether an insured, as that term is defined by the [MVFRL], could, under certain circumstances, recover under both the liability and underinsured motorist provisions of a single policy." *Wolgemuth,* 535 A.2d at 1149.

trunks. The court stated: "to hold in plaintiff's favor would go beyond that which the legislature contemplated in enacting mandatory underinsurance.... It would appear anomalous and illogical to suggest that [the plaintiff] expected underinsurance coverage when involved in a single vehicle accident with her husband. [She] should not be able to convert essentially first party underinsured motorist coverage into third party liability coverage." *Id.* at 169–70. *See also Preferred Risk Mut. Ins. Co. v. Tank,* 146 Ariz. 33, 703 P.2d 580 (Ct.App.1985); *Millers Casualty Ins. Co. of Texas v. Briggs,* 100 Wash.2d 1, 665 P.2d 891 (1983). *But see Bratcher v. National Grange Mut. Ins. Co.,* 292 S.C. 330, 356 S.E.2d 151 (Ct.App.1987).

Moreover, the other justification for stacking, furtherance of the policies sought to be accomplished by the legislature, does not apply to this case. The purpose of underinsured motorist coverage "is to protect the insured ... from the risk that a negligent driver of *another vehicle* will cause injury to the insured ... and will have inadequate liability coverage to compensate for the injuries caused by his negligence." *Myers,* at 709–10 (quoting *Wolgemuth,* 535 A.2d at 1149). In the case at bar, Mrs. Nonemacher was not injured by a negligent driver of another vehicle. Rather, she was injured when the vehicle she was travelling in, driven by her husband, collided with another vehicle. No one has contested that her husband was liable for the accident. She was inadequately compensated for her injuries not because some third-party lacked adequate liability coverage, but because she did not purchase adequate liability coverage herself. Underinsured coverage " 'is not designed to compensate [the insured] or his additional insureds from [the insured's] failure to purchase sufficient liability insurance.' " *Wolgemuth,* 535 A.2d at 1150 (quoting *Myers v. State Farm Mut. Auto. Ins. Co.,* 336 N.W.2d 288, 291 (Minn.1983)). For the above reasons, I cannot hold that the offset provision in this case violates public policy.

■ *B. Stacking.* As previously noted, under Pennsylvania law, provisions in automobile policies that prohibit stacking of underinsured motorist coverage where multiple vehicles are insured under the policy are invalid as contrary to public policy. Aetna does not dispute that this is the law in Pennsylvania. However, Aetna argues that the offset provision must be applied before the $50,000 of underinsured motorist coverage is stacked. Thus, Aetna contends, the $50,000 of underinsured motorist coverage is offset by the $50,000 that Aetna has paid or has offered to pay under the liability coverage, which results in no coverage to stack.

Aetna has offered no reasons in support of its assertion, and I can find none. Although only one insurance policy is involved in this case, stacking treats the policy as if there were actually three separate policies, one for each insured automobile under the policy. The offset provision only applies to the policy that covers the automobile involved in the accident, not the policies covering the other two vehicles. Any other application of the offset provision would undermine the purposes behind stacking. Therefore, I hold that the offset provision only applies to that portion of the insurance policy applicable to the vehicle involved in the accident and not to those portions of the policy that cover the other two vehicles.

In conclusion, I hold that Mrs. Nonemacher is entitled to $10,000 of liability coverage and $100,000 of underinsured motorist coverage. Whether she is entitled to recover the full amount of coverage depends on the amount of damages she incurred as a result of the accident. I make no determination regarding that amount, and if the parties disagree on the amount, they should proceed to arbitration.

An appropriate Order follows.

### ORDER

AND NOW, this 10 day of April, 1989, it is ORDERED that Alice Nonemacher's motion for summary judgment is GRANTED and Aetna Casualty & Surety Co.'s motion for summary judgment is DENIED in accordance with the attached memorandum. Judgment is entered in behalf of the plain-

tiff, Alice Nonemacher, and against the defendant, Aetna Casualty & Surety Co.

It is hereby DECLARED that Mrs. Nonemacher is entitled to $100,000 of underinsured motorist coverage and $10,000 of liability coverage from Aetna Casualty & Surety Co.

The Clerk is directed to close the docket of this case for statistical purposes.