**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

v.

**Dawn M. STANFORD, Admx., et al.**

**No. 89–7496.**

United States District Court, E.D. Pennsylvania.

Jan. 12, 1990.

Louis E. Bricklin, Bennett, Bricklin & Saltzburg, Philadelphia, Pa., for plaintiff.

Michael S. Henry, Philadelphia, Pa., for defendants.

MEMORANDUM

KATZ, District Judge.

This is an action for declaratory judgment brought by State Farm Mutual Automobile Insurance Company ("State Farm") for the purpose of determining the amount of underinsured motorist coverage available to the defendants under two policies of automobile insurance issued by State Farm. Each of these policies contains an arbitration clause. Defendants have moved to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the ground that the issue of the amount of underinsured motorist coverage is within the exclusive jurisdiction of the arbitrators.

The controversy arose after an automobile accident, which occurred in Atlanta,

Georgia in July 1987, caused the deaths of Charles H. Stanford, Jr., and his wife, Jean Marie Stanford, and the injury of their three children, Dawn, Stephanie and Allison Stanford. The motor vehicle in which the Stanfords were riding was insured under State Farm policy number 3776–466–F10–38. The Stanfords also had another car insured by State Farm under policy number 3776–467–F10–38. Each policy provided liability coverage for bodily injury of $100,000 per person/$300,000 per accident. In addition, each policy provided underinsured motorist coverage.

Both the insurer and the insured's estate agree that benefits are owed under these policies; they disagree as to the limits of coverage. State Farm contends that the amount of underinsured motorist coverage under each policy is $15,000 per person/$30,000 per accident. State Farm bases its contention on the fact that the Pennsylvania Motor Vehicle Financial Responsibility Law requires the policy limit on underinsured motorist coverage to equal the policy limit of liability for bodily injury, absent a written request by the insured for lower limits. 75 Pa.Cons.Stat.Ann. § 1731(a), § 1734 (Purdon Supp.1988).[1] To its complaint State Farm attached alleged requests from the defendants for underinsured motorist coverage in amounts less than the limits for liability for bodily injury. Defendants, on the other hand, claim that these requests do not contain a material term of the contract, namely, the amount of the requested lower limits, and therefore contend that each policy offers $100,000 per person/$300,000 per accident.

In deciding whether Pennsylvania law provides a right to a judicial determination of the controversy over the amount of underinsured motorist coverage, or whether the policies' arbitration clause requires arbitration, the court's inquiry is limited to these questions: (1) whether an agreement to arbitrate was entered into, and (2) whether the instant dispute falls within the scope of that agreement. *Myers v. State Farm Insurance Co.,* 842 F.2d 705, 707 (3d Cir.1988). The parties do not dispute that there is an agreement to arbitrate; the only issue is whether the present controversy comes within the ambit of the arbitration clause.

That clause reads as follows:
*"Deciding Fault and Amount*

"Two questions must be decided by agreement between the insured and us:

"1. Is the insured legally entitled to collect damages from the owner or driver of an uninsured motor vehicle or underinsured motor vehicle; and

"2. If so, in what amount?

"If there is no agreement, these questions shall be decided by arbitration at the request of the insured or us. The Pennsylvania Uniform Arbitration Act, as amended from time to time, shall apply."

Under Pennsylvania law full use of contractual arbitration is encouraged, but only so long as a dispute is within the contemplation of the agreement to arbitrate. *Metropolitan Property and Liability Insurance Co. v. Malinowski,* 695 F.Supp. 175 (E.D.Pa.1988). Thus, an agreement to arbitrate is to be "strictly construed, and not to be extended by implication beyond its terms." *Allstate Insurance Co. v. Gammon,* 838 F.2d 73, 76 (3d Cir.1988) (judicial determination of issue whether a claimant is a "person insured" under an arbitration clause is permitted), citing *Emmaus Municipal Authority v. Eltz,* 416 Pa. 123, 125, 204 A.2d 926, 927 (1964).

---

1. § 1731. Scope and amount of coverage
(a) General Rule.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, ... unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage).

§ 1734. Request for lower or higher limits of coverage
A named insured may request in writing the issuance of coverages under section 1731 (relating to scope and amount of coverage) in amounts less than the limits of liability for bodily injury but in no event less than the amounts required by this chapter for bodily injury....

■ In keeping with these principles the United States Court of Appeals for the Third Circuit interpreted a State Farm policy, with an arbitration clause identical to those in the case at bar, to dictate arbitration only over questions of fault and amount of actual damages sustained. *Myers*, 842 F.2d at 707. The clause was held not to mandate arbitration of disputes concerning coverage for underinsurance benefits. *Id.*

The rationale for this interpretation of such an arbitration clause was spelled out in *LaCourse v. Firemen's Insurance Co.*, 756 F.2d 10 (3d Cir.1985). In *LaCourse*, a case involving an arbitration clause similar to the one here, the court found that Pennsylvania law permitted a judicial determination of the amount of coverage which an uninsured motorist policy offered. The court of appeals vacated the district court's conclusion that the words "amount of damages," which appeared in an automobile insurance company's arbitration clause, mandated arbitration for a dispute about policy limits.

Both the insured and the insurer in *LaCourse* agreed that benefits were payable under the uninsured motorist provision of the policy at issue. The insurer insisted that the total amount due was fixed by the policy limit at $30,000. The plaintiff, who sought arbitration, asserted that this policy limit should be stacked and thus provide a higher limit on coverage. The policy read as follows: "if we and an insured disagree, whether the insured is legally entitled to recover damages from the owner or driver of an uninsured motor vehicle *or we do not agree as to the amount of damages,* either party may make a written demand for arbitration." *Id.* at 12 (emphasis added).

The "plain language of the policy" placed this dispute over coverage limits beyond the scope of the arbitration clause. *Id.* at 13–14. The phrase "amount of damages" refers to the monetary loss sustained by the insured or his estate; this amount is not "measured by or restricted in any way by the policy limits." *Id.* at 14. The phrase "amount of damages" is a matter different from the question here and in *LaCourse*, namely the amount of coverage provided under the policy.[2] Like the question of stacking, the instant question about the policy limits for underinsured motorist coverage can be decided without becoming involved in an inquiry into the actual loss the claimants sustained. *Id.* Such an inquiry is for the arbitrators under the terms of the arbitration clause.[3] The parties' dispute over amount of coverage thus lies outside the ambit of arbitration.

Likewise, Pennsylvania law did not require arbitration over the amount of uninsured motorist coverage where the insured moved to dismiss the insurance company's suit for a declaratory judgment and for an injunction against arbitration. *Metropolitan Property and Liability Insurance Co. v. Malinowski*, 695 F.Supp. 175 (E.D.Pa. 1988). The insurance company in that case maintained that the amount of uninsured coverage was $15,000 per person, while the insured claimed the amount was $100,000 per person.[4] The court found that the

---

2. The court in *LaCourse* concluded that although the issues of amount of damages and amount of coverage might not facially appear to be "clearly distinct," upon "reflection" they were in fact different issues. *LaCourse*, 756 F.2d at 14.

3. The clause reads: "2. If [the insured is legally entitled to collect damages], *in what amount?"* (emphasis added)

4. The dispute in *Malinowski* arose under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat.Ann. § 1701 et seq. (Purdon Supp.1987). This required the minimum uninsured motorist coverage to equal the insured's coverage for bodily injury (in the poli-

cy at issue, $100,000) absent a request by the insured for lower limits. When the policy, which on its face provided for $15,000 in such coverage, was renewed subsequent to the law's enactment, the question arose as to the amount of uninsured motorist coverage.

The court's decision to deny the motion to dismiss was based on alternative holdings. The court based its decision on these reasons: (1) the amount of uninsured motorist coverage was outside the ambit of the arbitration clause and (2) since the insured claimed that his policy's stated limit of $15,000 violated the Financial Responsibility Law, the dispute fell within the exception to arbitrability for claims that the uninsured motorist clause violated a legislative mandate.

scope of the arbitration clause[5] did not reach this dispute over coverage limits, because the amount of loss actually sustained was not related to the policy limits.

Defendants rely on the case of *Pennsylvania General Insurance Company v. Barr,* 435 Pa. 456, 257 A.2d 550 (1969). The issue there concerned whether, and to what extent, the policies limited uninsured motorist coverage. The *Barr* court affirmed the lower court's dismissal of the insurance company's complaint, which requested that arbitration be enjoined, for lack of jurisdiction. The court held the dispute arbitrable because "the issue central to each question is the amount of payment *which is due the decedent's estate,* and that is a matter specifically reserved for arbitration[6] under the insurance contracts." *Id.,* 435 Pa. 456, 459, 257 A.2d 550 (emphasis added). *LaCourse* followed a different path. The amount of payment which is owed to the insured's estate is not central to the issue of policy limits, but rather is "a factual matter completely independent of the actual amount of insurance provided by the policy." *LaCourse,* 756 F.2d 10, 14. For this reason I will not follow *Barr.* I am bound by *LaCourse* and *Myers.*

Because the question of amount of coverage is not within the ambit of the arbitration clause in the State Farm policies at issue, this court has jurisdiction to resolve this question. The dispute need not be arbitrated and the defendants' motion to dismiss is denied.

---

**5.** The clause reads: "Whether any person is legally entitled to collect damages and the amount to which such person is entitled will be determined by agreement between that person and us. Upon written request of either party, any disagreement will be settled by arbitration...."

**6.** The arbitration clause stated: "ARBITRATION: If any person making claim hereunder and the Company do not agree as to the amount of payment which may be owing under this Part, then, upon written demand of either, the matter ... shall be settled by arbitration...."